UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at Chattanooga

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                        NO. 1:23-CR-008 TRM SKL

STEPHEN RICHARD CROW,

    Defendant.

## MOTION TO SUPPRESS

Defendant, Stephen Richard Crow, through undersigned counsel, moves to suppress the unlawful stop, and search of the defendant's vehicle, and the arrest and questioning of defendant. For grounds, the defendant would state:

## FACTS

On the 19th day of December 2022, the defendant was driving westbound on 6300 Shallowford Rd. Chattanooga, TN at 11:30 pm. Defendant was driving a silver Mitsubishi SUV. It is anticipated that the government will claim that they believed that the defendant had a resale amount of methamphetamine in his car.

Officer Gerrity was the first police vehicle behind the defendant, driving car #6113. Gerrity initiated a stop by activating the emergency lights on his vehicle. Defendant was pulled over for failure to maintain lane. Allegedly, the defendant crossed the "dotted" line two separate times. Gerrity's vehicle was equipped it an Axon fleet camera and recorded the time he was driving behind the defendant. Officer George wrote the affidavit of complaint in state court. George was the affiant but did not pull the defendant over. There was video recording from the vehicles and from body worn cameras (BWC).

Upon stopping the defendant's vehicle, officers asked the defendant to exit the car. Defendant was patted down. Officers asked for consent to search. The defendant declined the

request. Officer George asked the defendant if he had smoked marijuana. The defendant denied that he had marijuana or any contraband in the car. Then Officer George advised the defendant that the K-9 would be deployed to determine if there were narcotics in the car. Officer Gerrity is a K-9 officer. Gerrity ran his dog around the defendant's car several times. The officer's canine did not alert on the defendant's car indicating that no narcotics were present in the car. In fact, the defendant stated he thought that the K-9 officer was trying to make the dog bark. Officer George and Officer Dyess told the defendant the dog is "nationally ranked." The nationally ranked dog did not alert on defendant's car fromm any odor of narcotics emanating from the defendant's car.

Despite the nationally ranked dog's indication that no narcotics were present, officers believed they smelled marijuana on the defendant's breath but not from the car. Officers can be heard discussing probable cause and planning a means to search the car even though they were aware that no narcotics were scented from the car by Anki, the nationally ranked police drug detection dog. Eventually, Officer Dyess thought he saw a commercial marijuana package in the defendant's car. The body worn camera (BWC) records Officer Dyess trying to convince other officers that he knew the package contained "THC" products. From the view outside the passenger front seat and using his flashlight, Dyess saw the package material on the car's floorboard which contained a warning which Dyess claimed to be able to read and to recognize. The wrapper was empty according to the statements Dyess made in his assessment of the importance of the package which was captured and recorded on the body worn camera. The officers decided to search based upon Dyess assertion that he knew the empty package material which he alone identified, and which formerly contained a cannabis product.

The passenger side door was opened, and the officers began a search beginning with the supposed "THC package." The package was a legal nicotine package. Neither Dyess, George or Gerrity stopped to reconsider the whether the search should continue when the "THC" package

mirage de-materialized and the basis of probable cause vanished. The search did not stop but continued. The BWC records Dyess making excuses about his failure to properly identify the nicotine product and his imaginings that the package contained a cannabis product. No marijuana was found in the vehicle. Undeterred by Dyess's "THC Mirage," the dog sniff without a signal from the nationally ranked drug detection dog, the absence of any plain view contraband, and no ongoing criminal activity, the search continued. Eventually, over 1300 grams of methamphetamine was discovered.

The officers did not cite the defendant for the traffic infraction. It took over 17 minutes before the officers entered the defendant's vehicle. There was no probable cause developed for the 17 minutes. During this period, the officers failed to follow through on the purpose of the stop. In fact, no ticketing was initiated. Prior to the stop, ATF agents believed that they had arranged a controlled buy using an ATF agent. Defendant set up a meeting and teased the ATF agent into revealing herself and then left the meeting area. Officers pursued, which led to the stop and the facts described above.

## LAW

### The Stop

A. **Traffic Violation**

Officers having probable cause to stop a vehicle for a traffic violation can temporarily seize an automobile. *Atwater vs City of* Lago *Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 154 (2001). There is no unreasonable search and seizure when a vehicles occupant who have been stopped for a traffic violation are asked to get out of their vehicle. *Pennsylvania v Mimms,* 434 U.S. 106, 111 n.6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) Authority for the stop includes checking for outstanding warrants, checking driver's license, checking registration and proof of insurance, but ends when the purpose of the stop to issue a citation has been completed or when it reasonably should have been completed. *Illinois vs Caballes,* 543 U.S. 405, 408, 125

S. Ct 834, 160 L.Ed.2d 842 (2005) A stop can be extended upon the development of reasonable suspicion that criminal activity is afoot. *U.S. v Howard,* 815 F. App'x 69, 76 (6th Cir. 2020) If the stop is extended beyond the time when the traffic stop could have been expeditiously completed, then any extension beyond that time is unlawful. *Rodriguez vs. U.S.,* 575 U.S. 348, 354-355, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015)

Defendant contends that the officer lacked probable cause to stop the defendant. The defendant did not violate any traffic law. The failure to maintain lane was allegedly the basis for the stop. Fleet video recordings do not show that the defendant crossed any lanes marked for traffic. The reasonableness of the stop is ascertained by determining first "whether the officer's action was justified at its inception," and second "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This stop was not justified at its inception, but pretextual because there was no violation of traffic laws to justify the stop. While it might be argued that the officer subjective intention to "pretextual" stop the defendant can be legal if justified, any "pretextual stop that is not based upon probable cause" is illegal. In *U.S. v Freeman,* 209 F.3d 464 (6th Cir. 2000) in the concurrence, Judge Clay noted:

> Although it is true that under *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) and *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993) (en banc), a police officer may stop a vehicle for a traffic offense when his or her actual motivation is to search for contraband, it is also true that the officer must still have probable cause to make the initial stop, and must not abuse the *Whren* principle by using it as a subterfuge to justify the recovery of contraband after an illegal stop and search. Indeed, as the Supreme Court opined long ago, an illegal search cannot be justified by the potent evidence that it produces. See *Byars v. United States*, 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520 (1927).
>  *U.S. v Freeman,* 209 F.3d 464, 467 (6th Cir. 2000)

B.    **The Unreasonable Duration of the Stop**

Moreover, the stop was extended beyond the time necessary for the traffic stop. In fact, the Defendant was never given a traffic citation. The traffic stops quickly lost its significance in

the law enforcement efforts to locate contraband. "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of th[e] [Fourth] Amendment, even though the purpose of the stop is limited and the resulting detention quite brief." See *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1399, 59 L.Ed.2d 660, 667 (1979) A police officer may stop a motorist for a completed misdemeanor, if the officer has reasonable suspicion to believe the individual committed the crime and the stop furthers public safety. *United States v. Simpson,* 520 F.3d 531, 541 (6th Cir. 2008); *United States v. Jones*, 953 F.3d 433, 437-38 (6th Cir.), cert. denied 141 S. Ct. 437 (2020) The extension of a traffic stop must "supported by articulable facts that criminal activity may be afoot"—not a mere hunch. See *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The 17 minutes used to develop a basis to search was unreasonable considering the officer's indifference to the original purpose of the stop: a traffic violation. Here, the completed misdemeanor was ignored once the vehicle was stopped.

The stop became unlawful because the stop was a fishing expedition motivated by the pretext of a stop when no violation of law occurred. The officer's zeal to engage in a search resulted in imaging facts and grounds to search the defendant's vehicle where no reasonable officer would find a basis to search. The duration of the stop became unreasonable, and the purpose of solely pretextual without reasonable suspicion much less probable cause. The officer's conduct was violative of the 4th Amend. to the U.S. Constitution. Suppression is appropriate pursuant to the exclusionary rule.

**<u>Search of the Vehicle</u>**

Warrantless searches are unreasonable and violative of the 4th Amendment to the U.S. Constitution. *Maryland vs Dyson,* 572 U.S. 465, 466, 119 S.Ct. 2103, 144 L.Ed. 2d 442 (1999) Officers may search mobile automobiles if they have probable cause to believe that the vehicle contains the evidence of a criminal activity. *U.S. vs Ross,* 456 U.S. 798, 799, 121 S. Ct. 2157, 72

L.Ed.2d 572 (1982) Probable cause exists when there is a fair probability of evidence of a crime found in a particular place. *Smith v Thornburg,* 136 F.3d 1070, 1074 (6th Cir. 1998)

In this case, the police lacked probable cause to search the defendant's car. The background here is that there was a failed controlled buy. The police did not know if the defendant had a controlled substance with him. The K-9 who searched the vehicle did not alert even though the handler, Officer Gerrity traveled the dog multiple times around the vehicle. Defendant believes the dog has been trained to detect marijuana and methamphetamine. The failure to alert by a well-trained "nationally accredited" drug detection police dog weighs against probable cause. Curiously, Officer claimed to smell marijuana on the defendant's breath! The odor of marijuana on the breath of the defendant is not probable cause to search the defendant's vehicle. Lastly, Officer Dyess believed that he saw an empty packaging for commercially packaged marijuana product. From outside the vehicle and by using a flashlight, Officer Dyess believed he could see a "THC" warning on the packaging. As noted above, this belief was not reasonable and was not true. Officers entered the defendant's vehicle only to learn that Dyess was seeing things and there was no marijuana packaging, but an empty package with a "nicotine" warning on it.

Officers continued their search regardless of failing to find marijuana or even marijuana packaging. The officers searched the vehicle and found over 1300 grams of methamphetamine. The search was warrantless and without exigent circumstances or probable cause. The exclusionary rule should apply because of the failure of probable cause.

**Frisk of the Defendant**

Because traffic stops are fraught with danger to the police, the Courts have recognized that asking motorists to step out of their vehicles is, at most, a minor inconvenience and is permitted. *Michigan v Long,* 463 U.S. 1032, 1047 (1983). Officer safety concerns are not a basis to make frisks and pat downs routine but requires; 1) reasonable suspicion; and 2) articulable

facts which relate to the occupants being armed and dangerous. *Pennsylvania vs Mimms,* 434 U.S. 106, 110 (1977); *U.S. vs McCallister,* 39 F.4th 368 (6th Cir. 2022). *Terry* frisks are permitted where there is "reasonable suspicion that the person searched may be armed and dangerous." *Terry vs Ohio,* 392 U.S. 1, 27 (1968); *U.S. v Pacheco,* 841 F.3d 384, 390 (6th Cir, 2016). A court's assessment of reasonable suspicion of a person being armed and dangerous is based upon a "totality of the circumstances" review of the facts from the perspective of a reasonably prudent person. *Terry vs Ohio,* 392 U.S. 1, 27 (1968) Like *Terry* stops, a *Terry* frisk requires "particularized facts" that the person searched was suspected of being armed and dangerous. *McCallister, supra*, at 374-375.

Here, there was no reasonable suspicion that the defendant was armed and dangerous. Much like *U.S. vs Noble*, 762 F.3rd 509 (2014), where the court held that a frisk not based upon reasonable articulable facts should result in suppression. It is believed that U.S. currency was seized from the defendant because of this pat down. This Court should suppress the search of Mr. Crow and all the fruit of the search.

## CONCLUSIONS

The defendant would pray the Court set this mater for hearing and ultimately suppress the stop, the frisk, and fruits of the search for the above stated reasons.

Respectfully submitted,

**FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.**

By:     */s/ Clayton M. Whittaker*
      **CLAYTON M. WHITTAKER, BPR #013461**
      Assistant Federal Defender
      *Attorney for Defendant*
      835 Georgia Avenue, Suite 600
      Chattanooga, Tennessee 37402
      (423) 756-4349 fax: (423) 756-4345
      Clay.Whittaker@fd.org