UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) 1:23-cr-8 |
| v. | ) |
| | ) Judges McDonough / Lee |
| | ) |
| STEPHEN RICHARD CROW | ) |

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

COMES NOW the United States, by and through United States Attorney Francis M. Hamilton III and Assistant United States Attorney Franklin P. Clark, and responds in opposition to the Defendant's Motion to Suppress (Doc. 18).

Law enforcement had been investigating the Defendant's drug trafficking activities previously, and on the occasion in question an undercover federal agent made arrangements to purchase a large amount of methamphetamine from the Defendant. The Defendant arrived at the appointed place and time, then left in the middle of the transaction when the agent refused to get in the vehicle with him. Thus, law enforcement had ample probable cause to stop and search the Defendant's vehicle minutes after it left the aborted drug deal. Accordingly, the Defendant's Motion to Suppress should be denied in all aspects.

## BACKGROUND

The Defendant is indicted for Possession with the Intent to Distribute Fifty (50) Grams or More of Methamphetamine Actual. (Doc. 1). He now seeks to suppress the introduction of the evidence obtained pursuant to the stop of the Defendant's vehicle, the search of the same, and the

search of the Defendant. (Doc. 18, PageID #31). The incident forming the basis of the Defendant's indictment and Motion to Suppress occurred on December 19, 2022, in Chattanooga, Tennessee.[1]

Law enforcement identified the Defendant as a suspected drug trafficker in the Eastern District of Tennessee well before the Defendant's ultimate arrest on December 19. Several days before the stop and arrest in question, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, ("ATF") contacted the Defendant on an encrypted messaging application. The Agent arranged the purchase of 10 ounces of methamphetamine for $1,850.00. On December 19, 2022, the Defendant instructed the Agent to meet him at the Fuji Steak & Seafood restaurant at the Shallowford Road exit in Hamilton County, Tennessee.

Portions of the exchange between the Agent and the Defendant include:

Agent: U still gonna do 225 a zip… that's more than I'm used to paying. …. I just won't be able to wait around all day, my money will be good if you gonna have it when I need it … I'll have a band to spend if people come through like they say

Defendant: I usually have good stock on everything and I usually don't go as long as I have without being good. I went a little while without being good right now. I will be home late tonight but I'll be coming through your area tomorrow. I'll do 200 zip on them … What are you been paying?

Agent: 180-200 depending on who, but it's been hit n miss and no one is consistent enough with quality, time and price … If I can get the band will u have that?

Defendant: Oh I gotcha … Do you wanna get 10? I'll do 1850

…

Agent: Damnnn if it's not too late tonight just hit me up if you can and I'll hold out but that puts me in a tough spot

Defendant: I'll be headed back no later than 7 o'clock

---

[1] The recitation of facts in this response is what the undersigned *believes* the testimony will establish at the hearing on this matter. This recitation is not submitted for the purpose of establishing any fact as true and is not intended to take the place of sworn testimony.

Agent: What time you think u will be near me? … I just don't want to be waiting all night

Defendant: I'll be back in Chattanooga at 20 till nine

…

Defendant: I'm leaving Atlanta right now. I've been driving through for days now myself I just got back from a 4 Hour Dr. to Atlanta yesterday. And I've got other people meet me in Chattanooga nine

Agent: Oh damn you've had a rough couple days. Where u want to meet… could u come to bass pro of the interstate? I'm not super familiar with chatt

Def: Meet me at Fuji of Shallowford Road exit … Bass pro is an E St. and you don't wanna meet nobody doing business in East Ridge

…

Defendant: Where are you

Agent: 10 out

Defendant: What you drive

Agent: Here … Silver truck … I just pulled in

Defendant: Pull over 5 places to your left

Agent: Ok … Is that you?

Defendant: Yes

Agent: I want to jump on here … You

Defendant: Come over here

The Agent approached the Defendant in the parking lot as instructed. When she arrived at the Defendant's window, he attempted to get her to enter the vehicle. For safety reasons, she refused. When the Agent would not get in his vehicle, the Defendant drove away, refusing to go forward with the drug deal.

Other law enforcement agents were monitoring the attempted transaction to provide security for the undercover agent. So as to protect the agent's undercover status, the Defendant was not stopped and arrested as he was leaving the parking lot. Rather, ATF Agents had a Chattanooga Police Department officer stop the Defendant's vehicle less than two miles down Shallowford Road. Still in an effort to protect the integrity of the undercover operation, officers utilized an independent basis for the stop (failing to maintain lane), and a K-9 was used so as not to arouse the Defendant's suspicion that the stop was in connection with the drug deal he just left. However, the K-9 failed to alert on the vehicle. Therefore, officers searched the vehicle based on the fact that the Defendant just aborted a large sale of methamphetamine.

Suspected methamphetamine (1,327.1 grams) was found in the vehicle, as well as $1,911.08 in U.S. currency in the Defendant's pocket. While in the backseat of the patrol car, the Defendant made phone calls that were recorded on the in-car camera. Since he was handcuffed, he talked on speaker phone, and he made clear to the female to whom he was talking that the officers did not know he still had his phone. She asked him if he "threw everything out," and he said, "no, I didn't have time." He also used a talk-to-text feature, saying, "You got me, but not really," which is the same message received by the undercover agent while the Defendant was in the patrol car.

The Defendant now challenges the stop of the vehicle and the search leading to the discovery of the drugs. (Doc. 18, Page ID# 31).

## ANALYSIS

**The stop and search of the vehicle were supported by probable cause**

"Probable cause is a flexible, common-sense standard." *Texas v. Brown*, 460 U.S. 730, 742 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual

showing of such activity." *United States v. Barrett*, 890 F.2d 855, 861 (6th Cir. 1989). Additionally, probable cause is assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001).

"It is well-established that an officer may conduct a stop based on information obtained by fellow officers." *United States v. Lyons*, 687 F.3d 754, 765-766 (6th Cir. 2012). This "collective knowledge" rule allows police officers to act on information they may not be personally know, but rather was communicated to them by another officer. *Id*, 766. Collective knowledge is imputed among multiple law enforcement agencies, "even when the evidence demonstrates that the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop." *Id*. The focus is on whether the officer *supplying* the information possesses information rising to the level of probable cause. *Id*. 769.

Against this legal backdrop, law enforcement in this case possessed probable cause justifying the traffic stop, and the information is imputed to the Chattanooga Police Department officers under the "collective knowledge" rule. Prior to the stop, ATF and other drug officers were consistently receiving information from an informant on the Defendant's drug trafficking activities – including the fact that the Defendant obtained his methamphetamine in Atlanta. Moreover, officers had been surveilling the Defendant, identified his vehicle, learned the Defendant was out on bond for a large scale methamphetamine bust in Whitfield County, Georgia, and established direct contact with the Defendant through an undercover agent pretending to be a drug purchaser. A drug purchase was negotiated and a location and time for the transaction was established. Much of this historical information, as well as the fact that the Defendant was meeting an ATF agent for the sale of 10 ounces of methamphetamine, was shared beforehand with the Chattanooga Police

Department Officers who ultimately stopped the Defendant. The Defendant arrived at the location of the deal and made contact with the agent he believed was there to buy drugs. Only when the agent refused to get in his vehicle did the Defendant terminate the drug deal and leave.

The Sixth Circuit has addressed situations such as this.

> Viewing these facts within the totality of the circumstances, the police did have a reasonable belief that contraband would be found in a particularized location. Police had a reason to believe drugs would be found in Arnold's trunk because of the corroboration of the informant's tips, the officer's first hand observation of a phone call arranging a controlled buy, the crowd gathering around the Monte Carlo's trunk, and Arnold driving to the proposed drug deal. All of these facts, when taken together, do amount to probable cause. Accordingly, police had probable cause to search Arnold's vehicle for drugs before the traffic stop was initiated.

*United States v. Arnold*, 442 F. App'x. 207, 211 (6th Cir. 2011).

Since "the actual motivations of the individual officers" at the time of the traffic stop make no difference, the traffic violation also provided a separate legal justification to support the stop of the Defendant's vehicle. *Whren v. United States*, 517 U.S. 806, 813 (1996). However, it is not necessary for the Court to analyze the traffic violation, as probable cause existed independent of the violation observed by the Police Officer making the stop. It is likewise unnecessary for the Court to evaluate whether the duration of the stop was extended beyond the time necessary for the traffic stop, as the stop was based on probable cause that the Defendant possessed drugs, and not merely on a traffic violation.

The search of the vehicle is lawful for the same reasons. As set forth above, law enforcement had probable cause to believe the Defendant drove to the Fuji parking lot to sell methamphetamine. Therefore, the search was likewise lawful. ("Officers may search an automobile without having obtained a warrant so long as they have probable cause to do so." *Collins v. Virginia*, 138 S.Ct. 1663, 1670 (2018).)

The Defendant also challenges a "frisk" where he claims US currency was seized because of a "pat down." (R. 18, Page ID# 37). The proof will show that the currency was not removed from the Defendant's pocket until after he was in custody and in the back of the patrol car. As set forth above, officers had probable cause to believe the Defendant possessed drugs. In fact, by the time the currency was removed from his pocket, officers had already located the methamphetamine in the car. Officers had probable cause to believe the Defendant just abandoned an attempt to sale a large amount of methamphetamine, thus he was still in possession of the drugs he came to sell. Accordingly, the arrest was proper. ("The Fourth Amendment permits a warrantless arrest where there is probable cause for the arrest." *United States v. Jimenez*, 654 F. App'x. 815, 819 (6th Cir. 2016).) Therefore, since the Defendant's arrest was lawful, items found on his person pursuant to his arrest are admissible. ("Searches of a person incident to arrest, 'while based upon the need to disarm and to discover evidence,' are reasonable regardless of 'the probability in a particular arrest situation that weapons or evidence would in fact be found.'" *Riley v. California*, 573 U.S. 373, 386 (2014).)

**The evidence is not subject to suppression even if the stop and search were improper**

Assuming *arguendo* that the stop and search of the defendant's car were unreasonable—they were not—the Defendant is not entitled to suppression of the evidence seized from his car. In *Herring v. United States*, 555 U.S. 135 (2009), the Supreme Court reiterated the limited applicability of the exclusionary rule, emphasized that the rule's purpose is to deter future Fourth Amendment violations, and held that, before applying the exclusionary rule, courts must weigh the substantial social costs of the rule against the culpability of the law enforcement agents. *Id*. at 141-44. "To trigger the exclusionary rule," the Court explained, "police conduct must be

sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id*. at 144.

Thus, a court must first objectively assess whether the police conduct was so "deliberate, reckless, or grossly negligent" that exclusion would meaningfully deter such conduct in the future. *Id*. Second, a court must weigh that conduct against the exclusionary rule's "costly toll upon truth-seeking and law enforcement objectives," including its "principal cost of . . . letting guilty and possibly dangerous defendants go free." *Id*. at 141. The Supreme Court signaled that the types of police action for which suppression is appropriate are those which originally gave rise to the exclusionary rule, *i.e.*, "intentional misconduct that was patently unconstitutional [or] a flagrant or deliberate violation of rights." *Id*. at 143. The Court cited three examples of such misconduct: (a) breaking into a private residence and confiscating incriminating papers without a search warrant and without any sworn and particularized information that would have supported the issuance of a warrant, (b) entering a place of business "without a shadow of authority" and seizing everything, and (c) forcing open the door of a private residence, handcuffing the occupant, brandishing a false warrant, and searching the residence. *Id*. at 143-44.

Under *Herring*, suppression is inappropriate in the present case. Law enforcement reasonably believed under the circumstances the Defendant was arriving at the Fuji parking lot to sell drugs. As suspicion increased (*e.g.*, when the Defendant actually arrived at the location, engaged with the undercover agent, and then left when the agent would not get in his vehicle), law enforcement diligently stopped the vehicle, and appropriately took steps to try to prevent the Defendant from realizing the stop was related to the drug transaction. Even if the Court disagrees with the officer's assessment that probable cause existed, the combined actions of law enforcement

in this instance do not amount to the kind of gross misconduct that the exclusionary rule is meant to deter.

## CONCLUSION

The United States respectfully submits the Defendant's Motion to Suppress should be denied.

Respectfully submitted,

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY


By: *s/Frank Clark*
FRANKLIN P. CLARK
Assistant U.S. Attorney
TN BPR# 034112
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 752-5140
Frank.clark@usdoj.gov

Page **9** of **9**

Case 1:23-cr-00008-TRM-SKL   Document 23   Filed 06/07/23   Page 9 of 9   PageID #: 50