UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at Chattanooga

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                      NO. 1:23-CR-008 TRM SKL

STEPHEN RICHARD CROW,

    Defendant.

## POST-HEARING MEMORANDUM

Defendant, Stephen Richard Crow, through undersigned counsel, provides the following post-hearing memorandum to aid the Court's decisional process. For grounds, the defendant would state:

## FACTS

Alcohol Tobacco and Firearms (ATF) Agent Jeff Bagwell testified for the government. The evidence showed that the agents of ATF became aware of the Defendant, Stephen Crow in September 2022. Hunter Coy was being investigated in the Cleveland, Tennessee area for drug trafficking. After Coy's arrest, he identified Stephen Crow as his source of supply. Tr. Pg. 10 ln 25. During debriefing he showed law enforcement his phone and text messages that were indicative to law enforcement of drug distribution. Tr. Pg. 11 ln 3. Coy said crow was a resident in Whitfield County, Georgia and drove a Silver Ford Focus. Tr. Pg. 11 ln 9. Further, he claimed Crow was recently arrested of possessing a large amount of methamphetamine. Tr. Pg. 11 ln 12.

ATF agents ran an NCIC search on Stephen Crow and found that he had been arrested in Whitfield County, Georgia for multiple narcotics related offenses. Tr. Pg. 11 ln 23. Agents also found a silver Ford Fiesta registered to Stephen Crow. Tr. Pg. 12 ln 10. The agents knew that the model was incorrect but the color and make matched. Coy claimed that Crow went to Atlanta to get methamphetamine. Tr. Pg. 13 ln 1. The text messages were photographed and preserved as

evidence and offered as exhibit "1A". Tr. Pg. 14 ln 11. The green messages in the texts were from Coy and the white messages were from Crow. Tr. Pg. 15 ln 6. ATF agent Bagwell testified that he believed the text were about Crow being in Atlanta and gathering money to purchase methamphetamine. Tr. Pg. 19 ln 1. A phone number for Crow was given by Coy. Coy talked about other drug dealers. He mentioned that he had distributed for Crow methamphetamine to Randall Cooper. Particularly he recalled four occasions with the max amount being 4 kilos. Tr. Pg. 20 ln 21. Agents attempted to corroborate what Cooper had related. Tr. Pg. 21 ln 5-25 and Pg. 22 ln. 1.

Agent Bagwell included the information about the Defendant's phone in an affidavit for a search warrant seeking GPS location. Tr. Pg. 22 ln 13-22. The search warrant was granted, and location monitoring occurred for 11-12 days on the phone number given by Hunter Coy. Tr. Pg. 23 ln 13. Two trips to Atlanta were confirmed by GPS location monitoring to Atlanta. Tr. Pg. 23 ln 23.

Randall Cooper was subject to a parole search. Cooper advised Bagwell that he had introduced Coy and Dawson Becker to Crow. Tr. Pg. 25 ln 18. Cooper mistakenly said that Crow owned a Ford Focus. Tr. Pg. 25 ln 24. Cooper said that Crow lived in Chattanooga off Shallowford Road. Tr. Pg. 26 ln 1. Agents were told by Cooper that Crow sold him large amount of methamphetamine along with Coy and Becker. Tr. Pg. 26 ln 6. On early November Cooper told me Crow was traveling to Atlanta. Bagwell testified that he was receiving GPS monitoring location of the phone he had a search warrant issued on showing a trip to Atlanta. Tr. Pg. 27 ln 6.

Agent Bagwell spoke with Det. Caraway in Whitfield County, Georgia about the arrest in the county. Caraway said the arrested Crow on Peden Loop which is adjacent to Crow lane. Tr. Pg. 28 ln 22. Crow was arrested with cash and methamphetamine. Tr. Pg. 29 ln 1. Evidence

corroborated that Crow was living in Chattanooga and drove a silver Ford Fiesta. Tr. Pg. 30 ln 23.

On the 16th, of November 2022, Chattanooga Police pulled Crow over at the insistence of ATF. Tr. Pg. 31 ln 4. Narcotics canine was deployed and found marijuana and some U.S. currency. Tr. Pg. 31 ln 11. He was cited and was driving the silver Ford Fiesta at the time. Tr. Pg. 32 ln 9. Crow was surveilled at apartment #25 by task force officer in Chattanooga. Tr. Pg. 33 ln 1. Cooper advised Bagwell that Crow had become suspicious from officers pulling individuals over leaving his apartment and from his cell phone behaving in an unusual manner. Tr. Pg. 33 ln 21.

Crow changed vehicles from the Ford to a grey Mitsubishi, and Cooper told me about the change. Tr. Pg. 34 ln 10. Surveillance confirmed the vehicle described was parked where the Ford usually parked at the complex. Tr. Pg. 34 ln 10. Never saw Crow in the Mitsubishi. Tr. Pg. 34 ln 24.

Cooper advised Bagwell that Crow was using an encrypted app for distributing called SUDO. Tr. Pg. 35 ln 24. Messages were shown by Cooper to Bagwell from the SUDO app in December 2022 which the government introduced as Exhibit "2". Tr. Pg. 36 ln 5. The messages are from Cooper to Crow. Tr. Pg. 37 ln 20. According to Cooper, Crow is using 762-499-5551 on the SUDO app as a phone number. Tr. Pg. 38 ln 25 and Pg. 39 ln. 1. Agent Bagwell asked ATF agent Larkins to make an undercover buy from Crow. Tr. Pg. 39 ln 9. Cooper introduced Larkins in an undercover role to Crow. Tr. Pg. 40 ln 20. Bagwell testified that he believed trough texting on SUDO that Crow was in Atlanta buying drugs. Tr. Pg. 41 ln 18. A meeting was arranged between Larksins and Crow. Tr. Pg. 45 ln 3. Crow and Larkins arranged to meet to conduct a drug buy on SUDO. Tr. Pg. 42 ln 6. The transaction was to take place at Fuji restaurant off of Shallowford Rd., but it was aborted by Crow. Tr. Pg. 46 ln 9. No money or drugs were transacted at Fuji and no negotiations occurred there. Tr. Pg. 71 ln 2. There were

discussions about amounts of drugs and cost on te SUDO app only. Tr. Pg. 46 ln 9. In the discussions on SUDO discussions were held using code words. Officers believed that methamphetamine was being discussed. Tr. Pg. 110 ln 22.

Crow traveled on Shallowford Rd. westbound and under surveillance. Tr. Pg. 47 ln 6. Officer tried to develop independent probable cause but that did not happen. Tr. Pg. 48 ln 10; and Pg. 123 ln. 24. He was pulled over around the 6300 block of Shallowford Rd. Tr. Pg. 123 ln 14; and Pg. `139 ln. 7. Officer Gerrity initiated a stop by activating the emergency lights on his vehicle. Defendant was pulled over for failure to maintain lane. Tr. Pg. 137 ln 8. Allegedly, the defendant crossed the "dotted" line two separate times. Tr. Pg. 137 ln 8. Chattanooga Police canine officer deployed his dog and performed an open are sniff search. Tr. Pg. 148 ln 16. The certified dog did not alert. Tr. Pg. 148 ln 23. Officers decided to search the defendant's car. During the search a large quantity of methamphetamine was found. Tr. Pg. 71 ln 17. Crow was never seen with drugs or making any transactions for drugs before the search. Tr. Pg. 72 ln 1-Pg. 73 ln. 1.

## LAW

**A. Reasonable suspicion**

This reasonable-suspicion test turns on the same totality of the circumstances that governs probable cause. See *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). However, reasonable suspicion requires less than the probability that criminal activity is afoot necessary for probable cause. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The officers need only "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Kansas v. Glover*, ––– U.S. ––––, 140 S. Ct. 1183, 1187, 206 L.Ed.2d 412 (2020) (quoting Cortez, 449 U.S. at 417–18, 101 S.Ct. 690).

Here, officers had reasonable suspicion to stop the defendant based upon the aborted drug deal but not probable cause to search.

## B. Probable Cause/ Totality of Circumstances

Reasonable suspicion supporting a traffic stop may ripen into probable cause to search a vehicle based on the officer's interactions with the car's occupants. See *United States v. Craig,* 198 Fed.Appx. 459, 463 (6th Cir.2006). Probable cause to search a vehicle is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir.1998). Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Id. The Fourth Amendment demands that a traffic stop must not be "unreasonable" under the totality of the circumstances. *Whren v. United States*, 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In analyzing the reasonableness of the stop, the Court queries "whether the police officer possessed probable cause or reasonable suspicion to believe that a traffic violation occurred, not whether a traffic violation in fact occurred." *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir.2007). Here, only reasonable existed.

The aborted drug deal is relied upon by the United States to search the defendant's car. It is true that the Cooper allegedly introduced Larkins to Crow for the purpose of arranging a drug deal. Cooper had to be relied upon to show that the SUDO phone number (762) 499-5551 was related to Crow. There was no exchange of money or showing of narcotics at the scene. At best these facts rise to the level of reasonable suspicion, but not probable cause. However, reasonable suspicions failed.

## C. Reliability of Coy and Cooper

It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A warrant must be upheld as long as the magistrate had a "substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing...." Id. at 236, 103 S.Ct. 2317. In *Gates*, the Court rejected a rigid application of the two-pronged "veracity" and "basis

of knowledge" test fashioned in the cases of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *Gates* requires trial courts to consider "veracity," "reliability," and "basis of knowledge" which are highly relevant in assessing the value of an informant's tip, these elements should not be understood as "entirely separate and independent requirements to be rigidly exacted in every case but part of the totality of circumstances. 462 U.S. at 230, 103 S.Ct. 2317.

The "basis of knowledge" factor of the Gates framework "refers to the particular means by which an informant obtained his information." *Smith*, 182 F.3d at 477 (citing Gates, 462 U.S. at 228, 103 S.Ct. 2317). There must be sufficient indication of the underlying circumstances from which an informant could reasonably conclude illegal activity is afoot, which includes an informant's "basis of knowledge," *Gates*, 462 U.S. at 233–34, 103 S.Ct. 2317

Coy and Cooper were not reliable wit regard to the allegations that Crow was their source of supply. The tip that Crow was the supplier was never corroborated. It is true that the public arrest record of Crow in Whitfield County was corroborated, and the very general type of vehicle Crow drove (Ford Silver sedan). There was no corroboration by showing that crow brought and sold methamphetamine as alleged by Coy and Cooper. Crow was alleged to have travelled to Atlanta to purchase drugs but that was never corroborated. The best the government could do was to seek a GPS locator. The phone allegedly used by Crow was monitored traveling to Atlanta. However, no surveillance showed that Crow was purchasing drugs in Atlanta. To support that allegation depends solely on the reliability of Coy and Cooper. Their reliability with regard as to whether Crow was their supplier was never corroborated.

**D.      Failed Canine Alert**

Using the totality of circumstances analysis, the failed dog sniff is significant. The court must consider all relevant facts known to officers. A drug-sniffing dog was brought to the scene here, however, the drug detection dog failed to alert positively to the presence of narcotics in the

vehicle. As officer George noted, no independent probable cause existed due to the failed alert by the drug dog. Tr. Pg. 48 Ln. 10-13. The failure to alert dispelled the officers' reasonable suspicion for the stop and the suspicions that Crow was in possession of narcotics. Anik was a certified drug dog highly trained to detect the presence of narcotics, and the dog did not detect any narcotics in the car. Based upon this information, there were no grounds for the police to continue to believe that the vehicle contained narcotics after Anik's failed to alert. This is especially true in light of the testimony of officer Bagwell about drug dealers use of counter-surveillance to discover police officer's undercover. Tr. Pg. 61 ln. 12-Pg. 62 ln. 5.; Tr. Pg. 69 ln. 17-24; Pg 99 ln. 24. See *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005); Davis stands for the proposition that a failed dog alert may dispelled probable cause.

## CONCLUSIONS

The defendant would pray the Court grant the motion to suppress and suppress the fruits of the search.

Respectfully submitted,

**FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC.**

By:     */s/ Clayton M. Whittaker*
**CLAYTON M. WHITTAKER, BPR #013461**
Assistant Federal Defender
*Attorney for Defendant*
835 Georgia Avenue, Suite 600
Chattanooga, Tennessee 37402
(423) 756-4349 fax: (423) 756-4345
Clay.Whittaker@fd.org