# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | 1:23-cr-8 |
| v. ) | |
| ) | Judges McDonough / Lee |
| ) | |
| STEPHEN RICHARD CROW ) | |

## POST HEARING BRIEF OF THE UNITED STATES

COMES NOW the United States, by and through United States Attorney Francis M. Hamilton III and Assistant United States Attorney Franklin P. Clark, and pursuant to the direction of the Court submits this, its post-suppression hearing brief.

As previously set forth by the United States, and as developed further at the suppression hearing held on June 13, 2023, law enforcement had previously been investigating the Defendant's drug trafficking activities. On the occasion in question an undercover federal agent made arrangements to purchase a large amount of methamphetamine from the Defendant. The Defendant left in the middle of the attempted drug transaction when the agent refused to get in the vehicle with him, and he was stopped minutes after he left the aborted drug deal. Law enforcement had probable cause to stop the vehicle (though reasonable suspicion is all that was required), as well as probable cause to search it.

## BACKGROUND ESTABLISHING PROBABLE CAUSE

Law enforcement had probable cause to believe the Defendant arrived at the parking lot of the Fuji Steak and Sushi restaurant to sell methamphetamine to an undercover federal agent. The probable cause was established through the long-term investigation and surveillance of the Defendant. The probable cause, as shown at the suppression hearing, consists of the following:

On October 11, 2022, Hunter Coy was found to be in possession of a resale amount of methamphetamine and a firearm in Cleveland, Tennessee. (R. 27, Suppression Hearing Transcript, PageID# 313.) After his arrest, Coy identified the Defendant as his source of methamphetamine. (*Id*. at PageID# 316.) He named Randall Cooper as another individual associated with the Defendant in drug trafficking. (*Id*. at PageID# 317.) He told officers where the Defendant lived in Whitfield County, Georgia, and told officers what the Defendant drove. (*Id*.) He told the officers that the Defendant's source of methamphetamine was in Atlanta, and he would travel to Atlanta to obtain his supply. (*Id*. at PageID# 318-319.) He showed agents text messages between the Defendant and himself which were indicative of narcotics distribution. (*Id*. at PageID# 317.) He also told officers the Defendant had recently been arrested with a large quantity of methamphetamine. (*Id*.)

Law enforcement agents corroborated all aspects Coy's information.

- They confirmed he drove the vehicle described by Coy. (*Id*. at PageID# 317.) Coy described the vehicle as a silver Ford Focus, and agents discovered the vehicle was a silver Ford Fiesta – a similar compact sedan. (*Id*.)

- They verified the number associated with the narcotics related text messages Coy showed them belonged to the Defendant. (*Id*.)

- Furthermore, law enforcement was aware that Randall Cooper was on parole from a state conviction in Tennessee and had already surveilled him previously, believing he was distributing methamphetamine in Polk and Bradley Counties. (*Id*. at PageID# 327.)

- Agents applied for, and were granted, a federal search warrant for location data of the phone they had determined belonged to the Defendant. (*Id*. at PageID# 328.) Agents

monitored the location data for approximately 12 days and noticed at least two trips to the Atlanta area. (*Id*. at PageID# 329.)

- They confirmed that in August of 2022, the Defendant lived in Whitfield County, Georgia, where Coy had described, and had been arrested for approximately 1,000 grams of methamphetamine and just under $9,000.00 cash at his residence. (*Id* at PageID# 317, 334-335.)

- Officers went and spoke with Cooper, who corroborated Coy's information, and confirmed the Defendant was a large-scale drug trafficker. (*Id*. at PageID# 331-332.)

Cooper provided information in addition to the information provided by Coy. Cooper named additional people who were receiving large amounts of methamphetamine from the Defendant. (*Id*.) He told law enforcement that the Defendant was traveling to Atlanta on the day of the interview, which was corroborated by information agents were receiving pursuant to the phone location search warrant. (*Id*. at PageID# 333.) Cooper also told officers the Defendant was now living in an apartment on Shallowford Road in Chattanooga. (*Id*. at PageID# 335.) This information was corroborated by database queries of the Defendant's license plate on his Ford Fiesta and commercial plate readers which put the vehicle at an apartment building on Shallowford Road; by phone location hits that showed the phone in Chattanooga near Shallowford Road; and by visual surveillance where multiple law enforcement agents saw the Defendant at the apartment. (*Id.* at PageID# 335-336.)

Law enforcement's surveillance of the Defendant continued. On November 16, 2022, after following him from his apartment to Best Buy, then to the post officer where he came out with multiple packages, the Defendant's vehicle was stopped for a traffic violation. (*Id*. at PageID# 337.) His silver Ford Fiesta was searched. (*Id*.) While marihuana was the only illegal drug found

Page **3** of **10**

Case 1:23-cr-00008-TRM-SKL   Document 31   Filed 07/03/23   Page 3 of 10   PageID #: 499

in his vehicle that day, he was found to be in possession of between four and five thousand dollars. (*Id*.) Officers also stopped several vehicles they saw leaving the Defendant's apartment. (*Id*. at PageID# 339.) Around the time of the November 16th stop and search of the Defendant's vehicle and the subsequent stops of the people leaving his apartment, officers stopped receiving location information on the Defendant's phone. (*Id*. at PageID# 338-340). Cooper later told the officers that the Defendant changed his phone and began using an encrypted messaging application. (*Id*. at PageID# 339-341.) The Defendant explained to Cooper that he got rid of his phone because it had been acting weird, and he suspected he was being surveilled by law enforcement. (*Id*.) He further explained he was suspicious because two cars had been pulled over leaving his apartment. (*Id*. at PageID# 339.)

Cooper told officers that after the Defendant was pulled over in the Silver Focus in November, the Defendant had switched vehicles and was now driving a gray Mitsubishi SUV. (*Id*. at PageID# 440.) Through visual surveillance, officers corroborated this by seeing a silver Mitsubishi Outlander Sport SUV with a temporary tag parked where the Fiesta typically parked at the Defendant's apartment complex. (*Id*.) Cooper also showed officers messages between himself and the Defendant on Sudo, the encrypted application the Defendant was now using after dropping his previous phone. (*Id*. at PageID# 341-342.) When Cooper provided these messages to officers on December 11, 2022, he told officers the Defendant was in Atlanta. (*Id*. at PageID# 342-343.) The messages indicated to the officers that the Defendant was currently attempting to re-up his supply of methamphetamine and was upset with the quality and price of what his suppliers were attempting to sell him. (*Id*. at PageID# 343-344.) The fact that it was the Defendant who was using the Sudo account to communicate with Cooper was corroborated when the Defendant showed up

in the Fuji parking lot and was the one messaging Agent Larkins to approach his car window using the same Sudo account. (*Id*. at PageID# 404.)

At this point, officers felt the time was right to see if an agent could contact the Defendant in an undercover capacity and attempt to purchase methamphetamine from him. (*Id*. at PageID# 344.) ATF Special Agent Alicia Larkins was chosen for the task, and Cooper approached the Defendant in an effort to see if he would sell to Larkins. (*Id*. at Page ID# 345-346.) Larkins contacted the Defendant through Sudo using the number Cooper had been using to contact the Defendant. (*Id*. at PageID# 344-347.) The entire exchange between Larkins and the Defendant has been introduced into the record (Government's Exhibit 3), so the United States will not recite it again here. Suffice it to say, the messages show the negotiation of price, amount, and a location for the sale. (Exhibit 3.) The messages also showed that the Defendant was in Atlanta, and the context led officers to believe he was currently "restocking." (*Id.* at PageID# 347.)

When Agent Larkins arrived at the location chosen by the Defendant – the Fuji Steak and Sushi Restaurant at the Shallowford Road exit – she was told to move her car and approach the Defendant's window. (*Id*. at PageID# 404). Larkins approached the window of the Defendant's Mitsubishi SUV and told him she would not get in the car with him because she had been "burned" in the past. (*Id*.) Observing that the Defendant then appeared "extremely paranoid," Larkins watched as the Defendant pulled out of the parking lot. (*Id.*) Larkins informed the other agents who were monitoring the transaction that the Defendant was leaving prior to the completion of the drug transaction because she would not get in his car. (*Id*. at 413.)

The Defendant's vehicle was stopped less than two miles later. (*Id*. 353.) His vehicle was under continuous law enforcement surveillance between the time he left the Fuji parking lot and when he was stopped. (*Id*.)

## THE STOP OF THE VEHICLE

While reasonable suspicion of criminal activity is all that is required to justify the stop (*United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012)), officers in this case had probable cause to stop and search the Defendant's car. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Barrett*, 890 F.2d 855, 861 (6th Cir. 1989). Additionally, probable cause is assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001).

For the reasons set forth above, law enforcement officers believed the Defendant came to the Fuji parking lot to sell methamphetamine. The United States submits that the text exchange between Larkins and the Defendant alone establishes probable cause to believe the Defendant was in possession of methamphetamine when he arrived in the parking lot. Law enforcement further had reason to believe that the Defendant would still have methamphetamine in his possession since he fled without completing the transaction. However, the Court need not view those messages in a vacuum, as the historical context set forth at the hearing, much of which is recounted above, is available to further cement probable cause.

The Defendant attempts to attack the reliability of Coy and Cooper in his effort to undercut probable cause. (R. 30, Post-Hearing Brief, PageID# 495.) The United States has never attempted to claim that Coy and Cooper were previously reliable informants. However, as set forth above, their information was corroborated in multiple ways. Additionally, both Coy and Cooper's exposed them as being involved in the distribution of methamphetamine as well. The self-incriminating nature of their information, including the messages they shared between themselves and the Defendant, is of moment. "When a self-incriminating statement is provided by an

Page **6** of **10**

Case 1:23-cr-00008-TRM-SKL   Document 31   Filed 07/03/23   Page 6 of 10   PageID #: 502

informant whose identity is known to the authorities, the statement is more likely to be true because of the risk inherent in making such a statement." *United States v. Greenburg*, 410 F.3d 63, 67-68 (1st Cir. 2005).

It is also relevant to the analysis that both Coy and Cooper independently gave information concerning the Defendant's drug trafficking. Courts have found that consistency between the reports of two informants can be sufficient corroboration to support a finding of probable cause. *United States v. Lancaster*, 145 Fed. App'x 508, 511 (6th Cir. 2005), *citing United States v. Schaefer,* 87 F.3d 562, 566 (1st Cir. 1996), *United States v. Le,* 173 F.3d 1258, 1266 (10th Cir. 1999), and *United States v. Pritchard,* 745 F.2d 1112, 1121 (7th Cir. 1984). In *Lancaster*, the Sixth Circuit pointed to the "consistent and cross-corroborative" information provided by three confidential informants in upholding a search warrant. *Lancaster*, 145 Fed. App'x at 511. Likewise, in *United States v. Ruffin*, the Sixth Circuit referenced the "internal consistency" of three informants' testimony in finding probable cause to support a search warrant. *United States v. Ruffin*, 1993 U.S.App. LEXIS 20615,*3 No. 92-4053 (6th Cir. Aug. 4, 1993).

Here, the information provided by both Coy and Cooper was consistent. In addition to the internal consistency in the information provided by Coy and Cooper, officers independently verified all aspects of their information. This, combined with the testimony of Agent Larkins and the messages between her and the Defendant establish probable cause for officers to believe the Defendant was in possession of methamphetamine when he arrived at the Fuji parking lot on December 19, 2022. The United States submits officers could have descended on the Defendant in the parking lot and arrested him as soon as he arrived in his Mitsubishi SUV. The fact that they chose to monitor him and stop him minutes after he left – less than two miles from the parking lot

– does not change the analysis. Probable cause – and certainly reasonable suspicion – existed to justify the stop.

## THE SEARCH OF THE VEHICLE

The information set forth above establishing probable cause to justify the stop of the vehicle also justifies searching it. The only new fact known to officers at the time of the search that they did not know at the time of the stop was that the K9 did not give a positive alert on the vehicle. The Court should consider this fact, along with all the other facts to determine whether probable cause existed.

The Defendant cites to *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005), and states there "were no grounds for the police to continue to believe that the vehicle contained narcotics" after the K9 did not give a positive alert. (R. 30, PageID# 496.) However, the Defendant's reliance on *Davis* is misplaced. *Davis* does not "stand for the proposition that a failed dog alert may dispel probable cause," as the Defendant claims. (R. 30 at PageID# 496.) Rather, *Davis* deals with extending the scope and duration of a traffic stop based on reasonable suspicion unrelated to the purpose of the stop. *Davis*, 430 F.3d at 354. In *Davis*, the defendant was stopped for a traffic violation, and officers had reasonable suspicion to detain him while waiting on a drug dog to arrive. *Id*. However, once the drug dog arrived and did not alert, the court held that reasonable suspicion no longer existed to continue the detention. *Id*. at 354-356. In other words, without probable cause, a defendant may be held for a drug sniffing dog to arrive (as long as reasonable suspicion exists to justify the detention), but when the dog finally does arrive and fails to alert, the detention must cease. That is not what happened here.

It is well established black-letter law that a probable cause analysis is based on the totality of the circumstances known to officers at the time. *E.g., United States v. Smith*, 510 F.3d 614, 648

Page **8** of **10**

Case 1:23-cr-00008-TRM-SKL   Document 31   Filed 07/03/23   Page 8 of 10   PageID #: 504

(6th Cir. 2007). Indeed, courts that have examined facts very similar to those presented here, where probable cause existed prior to a K9's failure to alert, concluded that a search was appropriate. *See, e.g., Unites States v. Williams*, 124 F.App'x. 885, 887 (5th Cir. 2005) (Holding that a drug dog's failure to alert did not negate the existence of the probable cause.) *United States v. Jodoin*, 672 F.2d 232, 236 (1st Cir. 1982) ("The dog's failure to react does not, in our view, destroy the 'probable cause' that would otherwise exist. It is just another element to be considered by the magistrate.")

In fact, the Middle District of Tennessee recently addressed the same issue, holding that *Williams* and *Jodoin* – and not *Davis* – provide the appropriate lens through which to view situations such as this:

> Defendant argues the fact that Officer Hull's canine failed to alert on the Jeep negates probable cause and dispels information offered by the confidential informant. (Doc. No. 47 at 12). … In support of this argument, Defendant cites *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005). In *Davis*, law enforcement observed the defendant talking with a suspected drug dealer, as well as two large boxes of detergent sitting next to the defendant's car. 430 F.3d at 349. The boxes of detergent were similar to large detergent boxes found in the search of a building linked with the suspected drug dealer. *Id.* Furthermore, investigators previously found large amounts of cocaine in several other individuals' vehicles when they were stopped after a meeting with the suspected drug dealer. *Id.* at 349-50. In view of these circumstances, the Sixth Circuit held that the officers who pulled the defendant over for speeding acted legally when they detained him for forty-five minutes while a drug-sniffing canine could be brought to the scene in order to sniff the defendant's car for the presence of cocaine because they had probable cause to do so. *Id.* at 355. Once the canine failed to alert to the presence of any drugs, however, the court found it was a violation of the defendant's Fourth Amendment rights to make him wait an additional fifty minutes for a second canine to be summoned. *Id.* at 356-57.
>
> Defendant argues that facts here are similar to *Davis*, so that the canine's failure to alert dispels any probable cause. The Court, however, finds *Davis* distinguishable for several reasons. First, *Davis* addressed reasonable suspicion for an investigative *Terry* stop, not probable cause for a search. Furthermore, and significantly, here, unlike *Davis*, other evidence gave rise to probable cause prior to the canine's failure to alert. *See United States v. Holloway*, No. 05-80659, 2006 U.S. Dist. LEXIS 74790, 2006 WL 2946788, at *6 (E.D. Mich. Oct. 16, 2006) (finding *Davis* distinguishable because other evidence

existed to give rise to probable cause to search the vehicle and holding that the defendant was not unreasonably detained during a traffic stop because "[t]he canine sniff [] was not as important as it was in *Davis*, so it was not unreasonable for the officers to continue searching Defendants' vehicle even after the dog failed to alert to any drugs in the trunk area."); *United States v. Jodoin*, 672 F.2d 232, 236 (1st Cir. 1982) (holding that a "dog's failure to react does not . . . destroy the 'probable cause' that would otherwise exist. It is just another element to be considered.").

    The facts here are similar to *United States v. Williams*, 124 F. App'x 885 (5th Cir. 2005). In *Williams*, the court held that the failure of a canine to alert did not deprive law enforcement of probable cause to search the defendant's vehicle pursuant to the automobile exception to the warrant requirement because "[e]xamining the totality of the circumstances, including [the defendant's] behavior, his dishonest responses to questions regarding the car, information previously gathered from informants and information gathered by the officers during their on-site interviews, the officers had probable cause to search the vehicle prior to the arrival of the drug dog." 124 F. App'x at 887. Similarly, here, as discussed above, considering the totality of circumstances, the Court finds that probable cause existed to search the Jeep prior to the canine's arrival at the scene. *See United States v. Ramirez*, 342 F.3d 1210, 1213 (10th Cir. 2003) ("We will not require investigators to cease an otherwise reasonable investigation solely because a dog fails to alert, particularly when we have refused to require that a dog sniff test be conducted at all."). Therefore, the canine's failure to alert did not deprive the officers of the already-existing probable cause to search the Jeep for evidence of drug-related crimes.

*United States v. Pigg*, 2019 U.S.Dist.LEXIS 21814, *14-17 (M.D. Tenn. No. 1:17-cr-5, Feb. 11, 2019).

Under the totality of the circumstances, probable cause as set forth above existed to justify the search, even in light of the K9's failure to alert. Accordingly, the United States respectfully requests the Defendant's Motion to Suppress be denied.

Respectfully submitted,

          FRANCIS M. HAMILTON III
          UNITED STATES ATTORNEY
By: *s/Frank Clark*
          FRANKLIN P. CLARK
          Assistant U.S. Attorney
          TN BPR# 034112
          1110 Market Street, Suite 515
          Chattanooga, Tennessee 37402
          (423) 752-5140, Frank.clark@usdoj.gov