# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) 1:23-cr-8 |
| v. | ) |
| | ) Judges McDonough / Lee |
| | ) |
| STEPHEN RICHARD CROW | ) |

## RESPONSE OF THE UNITED STATES TO DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Comes now the United States of America, by and through United States Attorney Francis M. Hamilton III, and Assistant United States Attorney Franklin P. Clark, and hereby respectfully responds to the Defendant's objections to the Magistrate Judge's Report and Recommendations. (R. 33, Objections to R&R).

The United States relies upon its previously filed Response to the Defendant's Motion to Suppress (R. 23, Response), its Post Hearing Brief, (R. 31, Brief of the United States), as well as this document in support of its contention that the Magistrate Judge's ruling was correct. The Defendant's objections lack merit, and this Honorable Court should overrule them, adopt the Report and Recommendation ("R&R"), and deny the Motion to Suppress.

### Procedural History

The Defendant was indicted for Possession of 50 grams or more of methamphetamine. (R. 1, Indictment.) The Defendant filed a Motion to Suppress. (R. 18, Motion to Suppress.) The United States filed a written motion in opposition, and an evidentiary hearing was held on June 13, 2023. (R. 23, Response; R. 25, Courtroom Minutes.) Post-hearing briefs were submitted by both parties. (R. 30, Defendant's Post-Hearing Brief; R. 31, Brief of the United States). On July

13, 2023, the Magistrate Judge issued an R&R recommending denial of the Defendant's Motion to Suppress. (R. 32, R&R.) From this, the Defendant now objects. (R. 33, Objections to R&R.)

## Facts

The United States relies on the facts as found by the United States Magistrate Judge detailed in her Report and Recommendation. (R. 32, R&R).

## Defendant's Objection

The Defendant's sole objection is labeled, "Defendant Objects to the Court finding that Probable Cause Existed before the Stop and Search." (R. 33, Objections, PageID# 535.) However, within his objection, he has multiple complaints regarding findings in the R&R.

## Corroboration of Two Individuals

Specifically, the Defendant argues two informants who provided information—against their own penal interests—that formed some of the basis for probable cause were not reliable (*Id.* at PageID# 535-537), stating, "[t]he information supplied by Coy and Cooper was untested and uncorroborated." (*Id.* at PageID# 537.) This claim is incorrect.

Hunter Coy: On October 11, 2022, Hunter Coy was found to be in possession of a resale amount of methamphetamine and a firearm in Cleveland, Tennessee. (R. 27, Suppression Hearing Transcript, PageID# 313.) After his arrest, Coy identified the Defendant as his source of methamphetamine. (*Id*. at PageID# 316.) He named Randall Cooper as another individual associated with the Defendant in drug trafficking. (*Id*. at PageID# 317.) He told officers where the Defendant lived in Whitfield County, Georgia, and told officers what the Defendant drove. (*Id*.) He told the officers the Defendant's source of methamphetamine was in Atlanta, and that the Defendant would travel to Atlanta to obtain his supply. (*Id*. at PageID# 318-319.) He showed agents text messages between the Defendant and himself which were indicative of illegal

Page **2** of **11**

Case 1:23-cr-00008-TRM-SKL   Document 34   Filed 08/10/23   Page 2 of 11   PageID #: 542

controlled substance distribution. (*Id*. at PageID# 317.) He also told officers the Defendant had recently been arrested with a large quantity of methamphetamine. (*Id*.)

Law enforcement corroborated all aspects Coy's information.

- They confirmed the Defendant drove the vehicle described by Coy. (*Id*. at PageID# 317.) Coy described the vehicle as a silver Ford Focus, and agents discovered the vehicle was a silver Ford Fiesta – a similar compact sedan. (*Id*.)

- They verified the number associated with the narcotics related text messages Coy showed them belonged to the Defendant. (*Id*.)

- They verified Randall Cooper was on parole from a state conviction in Tennessee and law enforcement had previously surveilled him, believing he was distributing methamphetamine in Polk and Bradley Counties. (*Id*. at PageID# 327.)

- Agents applied for, and were granted, a federal search warrant for location data of the phone they had determined belonged to the Defendant. (*Id*. at PageID# 328.) Agents monitored the location data for approximately 12 days and noticed that he made at least two trips to the Atlanta area. (*Id*. at PageID# 329.)

- They confirmed that in August of 2022, the Defendant lived in Whitfield County, Georgia, where Coy had described, and had been arrested for possession of approximately 1,000 grams of methamphetamine and just under $9,000.00 cash at his residence. (*Id* at PageID# 317, 334-335.)

- Officers went and spoke with Cooper, who corroborated Coy's information, and confirmed the Defendant was a large-scale drug trafficker. (*Id*. at PageID# 331-332.)

Randall Cooper: Cooper provided information in addition to the information provided by Coy.

- On the day law enforcement interviewed him, Cooper told law enforcement the Defendant was traveling to Atlanta. (*Id*. at PageID# 333.) This was corroborated by information agents were receiving pursuant to the phone location search warrant. (*Id*.)

- He told officers the Defendant was now living in an apartment on Shallowford Road in Chattanooga. (*Id*. at PageID# 335.) This was corroborated by database queries of the Defendant's license plate on his Ford Fiesta and commercial plate readers which put the vehicle at an apartment building on Shallowford Road; by phone location hits that showed the phone in Chattanooga near Shallowford Road; and by visual surveillance where multiple law enforcement agents saw the Defendant at the apartment. (*Id.* at PageID# 335-336.)

- In later interactions with law enforcement, Cooper reported the Defendant changed his phone and began using an encrypted messaging application. (*Id.* at PageID# 339-341.) The Defendant explained to Cooper that he got rid of his phone because it had been acting weird, and he suspected he was being surveilled by law enforcement. (*Id*.) That the Defendant changed his phone was corroborated by the fact that law enforcement had recently stopped receiving location information on the Defendant's phone. (*Id*. at PageID# 338-340). That the Defendant was now using an encrypted application to communicate was corroborated by messages Cooper showed officers between him and the Defendant. (*Id*. at PageID# 341-342.)

- He told officers the Defendant was suspicious because two cars had been pulled over leaving his apartment. (*Id*. at PageID# 339.) This was corroborated because

Page **4** of **11**

Case 1:23-cr-00008-TRM-SKL   Document 34   Filed 08/10/23   Page 4 of 11   PageID #: 544

> law enforcement knew several vehicles seen leaving the Defendant's apartment had been stopped by law enforcement as part of the investigation. (*Id*.)
>
> - He told officers the Defendant switched vehicles and was now driving a gray Mitsubishi SUV. (*Id*. at PageID # 340.) Through visual surveillance, officers corroborated this by seeing a silver Mitsubishi Outlander Sport SUV with a temporary tag parked where the Fiesta typically parked at the Defendant's apartment complex. (*Id*.)

As set forth above, the information provided by Cooper and Coy *was* corroborated—in multiple ways. It is also relevant to the analysis that both Coy and Cooper independently gave information concerning the Defendant's drug trafficking. Courts have found that consistency between the reports of two informants can be sufficient corroboration to support a finding of probable cause. *United States v. Lancaster*, 145 Fed. App'x 508, 511 (6th Cir. 2005), *citing United States v. Schaefer,* 87 F.3d 562, 566 (1st Cir. 1996), *United States v. Le,* 173 F.3d 1258, 1266 (10th Cir. 1999), and *United States v. Pritchard,* 745 F.2d 1112, 1121 (7th Cir. 1984). In *Lancaster*, the Sixth Circuit pointed to the "consistent and cross-corroborative" information provided by three confidential informants in upholding a search warrant. *Lancaster*, 145 Fed. App'x at 511. Likewise, in *United States v. Ruffin*, the Sixth Circuit referenced the "internal consistency" of three informants' testimony in finding probable cause to support a search warrant. *United States v. Ruffin*, 1993 U.S.App. LEXIS 20615,*3 No. 92-4053 (6th Cir. Aug. 4, 1993).

While Coy and Cooper do not provide all of the probable cause in this case, their information was detailed, consistent, and corroborated. The Defendant's contention that their information was "untested and uncorroborated" is simply incorrect.

## Attribution of the SUDO Messages to the Defendant

The Defendant next seems to take issue with the findings with respect to what happened in the parking lot of the restaurant where the methamphetamine transaction was to take place between the Defendant and the undercover ATF Agent. (R. 33,Objections, PageID# 537.) He complains about the Magistrate Judge's finding that the Defendant was the one using the encrypted application to communicate with the undercover officer. (More specifically, "[t]he court was wrong because there was no evidence to corroborate that the Defendant was using the SUDO app except Coopers word." (*Id*.)) The Defendant is incorrect.

As previously set forth, Cooper told officers the Defendant was now using the SUDO application, and had even showed officers communications between himself and the Defendant on the app. (R. 27, Suppression Hearing Transcript, PageID# 341-342 and Gov. Exhibit No. 2.) The meeting was arranged through SUDO communication to the same number, (Gov. Exhibit No. 3) and the SUV previously seen at the Defendant's apartment arrived at the meeting location. (R. 27, Suppression Hearing Transcript, PageID# 378.) Then, and tellingly omitted from the Defendant's objections, the person communicating with the undercover ATF Agent *in the parking lot* – telling her to move five spaces to the left, and then instructing her to come to the window of his vehicle – *was the Defendant himself*. (*Id*. at PageID# 404, 407.) Assuming *arguendo* there was any question as to who was messaging with the undercover Agent on the SUDO app before the meeting, all doubt was erased when the Defendant arrived for the meeting and was communicating with the agent on the app in the parking lot. As such, the Defendant's contention that the identity of the person using the SUDO app to communicate with the Agent "remained uncorroborated prior to the arrest" and that "Cooper had to be relied upon to show that the SUDO phone number …. was related to [the Defendant]" is simply incorrect.

**Purpose of the Meeting in the Parking Lot**

The Defendant also appears to be objecting to the Magistrate's characterization of the incident in the restaurant parking lot as an "aborted drug transaction." (R.33, Objections, PageID# 537.) According to the Defendant, "[t]here are no slang words used to describe what is being negotiated for delivery." (*Id.*) Once again, the Defendant overlooks facts.

For example, as set forth in the R&R, messages from the Defendant shown to law enforcement by Cooper "indicated to the officers that Defendant was attempting to refresh his supply of methamphetamine and was upset with the quality and price his suppliers were charging him." (R. 32, R&R, PageID# 511.) The undercover ATF Agent testified based on her training and experience that "being good," used in the context in which it was used by the Defendant on the SUDO app, meant "having the narcotics in his possession." (R. 27, Suppression Hearing Transcript, PageID# 400.) The Defendant tells the Agent he's leaving Atlanta – the place previously identified as his source of methamphetamine supply – prior to the meeting at the restaurant. (*Id*. at PageID# 401). Law enforcement was aware the Defendant had been arrested four months earlier for possessing 1,000 grams of methamphetamine. (*Id* at PageID# 317, 334-335.) Law enforcement had been told by two different individuals the Defendant was involved in methamphetamine trafficking. (*Id*. at PageID# 316, 331-332.) The Defendant's actions in the parking lot – attempting to get the ATF Agent to get in his vehicle to presumably take her somewhere else to complete the drug purchase – was "fairly common" in the illegal drug world according to the Agent. (*Id*. at PageID# 405.) Additionally, the content of the exchange between the Defendant and the ATF Agent show the negotiation of price, amount, and a location for the sale. (Gov. Exhibit 3.) The entire exchange has been introduced into the record (Gov. Exhibit 3),

so the United States will not recite it again here. But suffice it to say, when viewed in the context of all of the other known information, it leaves little doubt as to what is being discussed.

In short, contrary to the Defendant's claims, law enforcement ample evidence existed for the Magistrate Judge to believe the incident in the parking lot was an "aborted drug deal." Here, as well, the Defendant is simply incorrect.

### Probable Cause for the Traffic Stop

Though it is not entirely clear, the Defendant next appears to object to the Magistrate Judge's finding of probable cause for the traffic stop. (R. 33, Objections, PageID# 538-539.) It is difficult to determine whether he is conceding there was probable cause, as his Objections state, "if under totality of circumstances there was probable cause it was weak." (*Id. at* PageID# 539). Regarding probable cause to stop the vehicle, the Magistrate Judge carefully examined the facts and observed that, at the time of the stop, officers who stopped the vehicle knew:

> (1) law enforcement officers were engaged in an ongoing investigation into drug trafficking by Defendant; (2) Coy and Cooper, against their penal interests, separately and consistently admitted details of drug trafficking and identified Defendant as their source of illegal drugs; (3) law enforcement confirmed certain details given by Coy and Cooper, including the places Defendant lived, the general type and color of car Defendant drove and when he changed cars, Defendant's change in phone numbers and the use of Sudo to communicate about drug deals, Defendant's travel to Atlanta, and that Defendant had recently been arrested on drug charges; (4) Defendant's arrest record; (5) Cooper introduced Larkins to a person Cooper identified as Defendant using a specific Sudo phone number for the purpose of arranging a drug deal; (6) Larkins arranged the drug buy using that Sudo phone number, which was scheduled to take place upon Defendant's return trip from Atlanta; and (7) Defendant showed up at the set time and place upon his return from Atlanta, but the prearranged drug deal was aborted, with no exchange of money or showing of narcotics at the scene, when Larkins declined to get into Defendant's vehicle.

(R. 32, R&R, PageID# 521.) The Magistrate Judge considered all of these facts and correctly determined it was "not a close call." (*Id*. at PageID# 523.) To the extent the Defendant is

Page **8** of **11**

Case 1:23-cr-00008-TRM-SKL   Document 34   Filed 08/10/23   Page 8 of 11   PageID #: 548

challenging the Magistrate Judge's determination as to probable cause regarding the stop of the Defendant's vehicle, he is wrong, as probable cause existed.

## Probable Cause for the Search of the Vehicle

Finally, the Defendant appears to object to the Magistrate Judge's finding of probable cause with respect to the search of his vehicle. (R. 33, Objections, PageID# 539-540.) His argument in this respect centers around the fact that the K9 did not give a positive alert on the vehicle. (*Id*.) ("There were no grounds for the police to continue to believe that the vehicle contained narcotics after [the dog] failed to alert.") (*Id.* at PageID# 539.)

All of the facts previously relied upon by the Magistrate Judge for the stop of the vehicle existing to support the search as well. The only new fact known to officers at the time of the search that they did not know at the time of the stop was that the K9 did not give a positive alert on the vehicle. Regardless of the circumstances that could have contributed to the K9's failure to give a positive alert – the vehicle's location in a turn lane in the middle of a five-lane road (R. 27, Suppression Hearing Transcript,.PageID# 445-447), the fact that another dog was inside the searched vehicle (*id*. at PageID# 433), and the fact that the K9 *did* "show interest" in the vehicle (*id*. at PageID# 434) – the United States agrees that the Court should consider the fact, along with all the other facts to determine whether probable cause existed.

The Defendant continues to rely on *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005), in support of his contention. As the Magistrate Judge carefully sets forth in the R&R, *Davis* is readily distinguishable from this case, as "*Davis* addressed a seizure based on reasonable suspicion (i.e., a Terry stop), not probable cause, a point emphasized in the majority opinion." (R. 32, R&R, PageID# 524.) In *Davis*, the defendant was stopped for a traffic violation, and officers had reasonable suspicion to detain him while waiting on a K9 to arrive. *Davis, 430 F.3d at 354*.

Page **9** of **11**

Case 1:23-cr-00008-TRM-SKL   Document 34   Filed 08/10/23   Page 9 of 11   PageID #: 549

However, once the K9 arrived and did not alert, the *Davis* Court held reasonable suspicion no longer existed to continue the detention. *Id*. at 354-356. In other words, without probable cause, a defendant may be held for a drug sniffing dog to arrive (as long as reasonable suspicion exists to justify the detention), but when the dog finally does arrive and fails to alert, the detention must cease. That is not what happened here. In the case at hand does not involve a detention based on reasonable suspicion. Rather, probable cause existed before and after the K9 sniff.

The United States, in its post-hearing brief, set forth an analysis of the issue, citing *inter alia United States v. Williams*, 124 F.App'x. 885, 887 (5th Cir. 2005) (Holding that a drug dog's failure to alert did not negate the existence of the probable cause.), *United States v. Jodoin*, 672 F.2d 232, 236 (1st Cir. 1982) ("The dog's failure to react does not, in our view, destroy the 'probable cause' that would otherwise exist. It is just another element to be considered by the magistrate."), and *United States v. Ramirez*, 342 F.3d 1210, 1213 (10th Cir. 2003) ("We will not require investigators to cease an otherwise reasonable investigation solely because a dog fails to alert, particularly when we have refused to require that a dog sniff test be conducted at all."). (R. 31, Post-Hearing Brief, PageID# 505-506.)

The R&R engages an even more thorough, thoughtful, and insightful analysis of caselaw regarding the failure of a drug-dog to alert and the diminishment of probable cause generally. (R. 32, R&R, PageID# 524-530.) After examining the relevant law, the Magistrate Judge determined, "[t]he officers lawfully could consider pre-existing information in making the objective determination of whether there was a fair probability that evidence of a crime would be found in Defendant's vehicle despite the drug dog's failure to alert." (*Id*. at PageID# 529.) The Magistrate Judge considered the facts and determined "[t]he evidence of criminal activity here was strong

enough to establish a fair probability that evidence of a crime would be found in Defendant's vehicle." (*Id.*)

It is well established black-letter law that a probable cause analysis is based on the totality of the circumstances known to officers at the time. *E.g., United States v. Smith*, 510 F.3d 614, 648 (6th Cir. 2007). Under the totality of the circumstances, probable cause as set forth above existed to justify the search, even in light of the K9's failure to alert. Accordingly, the Defendant is incorrect on this issue as well.

## Conclusion

The Magistrate Judge's R&R is well-reasoned and properly supported by the evidence adduced during the suppression hearing. Accordingly, the Court should adopt the R&R and overrule the Defendant's objections.

Respectfully submitted,

FRANCIS M. HAMILTON, III
UNITED STATES ATTORNEY

By: *s/Frank Clark*
FRANKLIN P. CLARK
Assistant U.S. Attorney
TN BPR# 034112
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 752-5140
Frank.clark@usdoj.gov